UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 2:18-CR-21-2-TLS-APR |
| VICTOR YOUNG | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Young's Motion for Release on Home Detention [ECF No. 454]. In his Motion, Defendant Young requests that this court, pursuant to the Bail Reform Act, grant him temporary release from confinement due to the COVID-19 Pandemic in the form of release on an unsecured bond with home detention pending his sentencing. For the reasons set forth below, the Defendant's Motion for Release on Home Detention is DENIED.

**BACKGROUND**

On February 21, 2018, a Sealed Indictment [ECF No. 1] was filed charging nine defendants, including Defendant Young, with crimes related to a drug trafficking operation. On February 22, 2018, an Arrest Warrant [ECF No. 5] was issued as to Defendant Young. On the following day, Defendant Young was arrested. The Defendant has been in custody since his arrest, Final PSR 1, ECF No. 417, and is currently in confinement at the Jerome Combs Detention Center in Kankakee, Illinois, Mot. Release on Home Detention 1, ECF No. 454.

The Superseding Indictment [ECF No. 257] was filed on May 16, 2019, which contained two charges against Defendant Young. Specifically, Count I charged Defendant Young with knowingly and intentionally conspiring to distribute and possess with intent to distribute a

controlled substance, including 280 grams or more of a mixture and substance containing a detectable amount of cocaine base and 100 grams or more of a mixture and substance containing a detectable amount of heroin, and Count VI charged Defendant Young with knowingly and intentionally distributing 28 grams or more of a mixture and substance containing a detectable amount of cocaine base and a quantity of a mixture and substance containing a detectable amount of heroin. On September 20, 2019, the Defendant pled guilty [ECF No. 361] to Count I of the Superseding Indictment pursuant to a Plea Agreement [ECF No. 357]. In its October 8, 2019 Order [ECF No. 387], the Court adjudged the Defendant guilty of Count I of the Superseding Indictment.

Originally, Defendant Young's Sentencing Hearing was set before the Court for February 26, 2020 [ECF No. 388]. His Sentencing Hearing was later rescheduled for June 9, 2020 [ECF No. 427]. Since the Defendant's Sentencing Hearing was rescheduled, much has changed in the United States due to the COVID-19 Pandemic. The Court will refrain from offering a comprehensive summary of the COVID-19 pandemic as other courts have already done so, *see, e.g.*, *United States v. Oritz*, No. 1:18-CR-134, 2020 WL 1904478, at *2 (M.D. Pa. Apr. 17, 2020); however, the Court thinks it is useful to include that, as of April 29, 2020, there are 1,005,147 reported cases of COVID-19 and 57,505 reported COVID-19 deaths in the United States, *see* Cases of Coronavirus Disease (COVID-19) in the United States, Centers for Disease Control and Prevention, Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 29, 2020). On April 20, 2020, Defendant Young filed the instant Motion [ECF No. 454] requesting temporary release from custody pursuant to 18 U.S.C. § 3142(i). On April 23, 2020, the Government filed its Response [ECF No. 458]. The Court, having reviewed both filings, is now prepared to rule on the Defendant's Motion.

2

**STANDARD**

The Defendant's Motion requests temporary release pursuant to 18 U.S.C. § 3142(i). Section 3142(i) states that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for . . .[a] compelling reason." 18 U.S.C. § 3142(i). The Defendant argues that the emergence of the COVID-19 pandemic is a compelling reason for his release because he suffers from a condition that places him at a higher risk to experience complications from COVID-19 if he were to contract the virus. The Government argues that the Defendant's reliance on 18 U.S.C. § 3142(i) is misplaced because the Defendant is being detained pursuant to 18 U.S.C. § 3143(a) pending the imposition of his sentence and § 3142(i) applies only to pretrial detention orders.

The Government is correct that 18 U.S.C. § 3143, not § 3142, applies to the release or detention of a defendant pending sentence or appeal. *See* 18 U.S.C. § 3143; *United States v. Hartsell*, 3:19-CR-14, 3:20-CR-9, 2020 WL 1482175, at *1–2, — F.3d —, — (N.D. Ind. Mar. 25, 2020) (suggesting that 18 U.S.C. § 3143, not 18 U.S.C. § 3142, applies to presentence detention); *see also United States v. Johnson*, 2:17-CR-20489, 2020 WL 1821099, at *2 (E.D. Mich. Apr. 10, 2020). Applicable in this case, Section 3143(a)(2) provides:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless–
>
> > (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> >
> > (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

3

>> (B) the judicial officer finds by clear and convincing evidence that
>> the person is not likely to flee or pose a danger to any other person
>> or the community.

18 U.S.C. § 3143(a)(2). In the instant case, the Defendant pled guilty to a violation of 21 U.S.C. § 846, which statutorily prescribes a punishment of ten years to life imprisonment pursuant to the Controlled Substances Act. Accordingly, he is being detained pursuant to 18 U.S.C. § 3143(a)(2), as he has been found guilty of an offense described in 18 U.S.C. § 3142(f)(1)(C) (addressing "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)").

Detention pursuant to 18 U.S.C. § 3143(a)(2) is mandatory. However, "[a] person subject to detention pursuant to section 3143(a)(2)," such as the Defendant, "and who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).[1] The "conditions of release set forth in section 3143(a)(1)" are a finding by the judicial officer "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). As such, for Defendant Young to be released from detention, he must first show, by clear and convincing evidence, that he is unlikely to flee or pose a danger to the safety of any other person or the community if released. If he meets that burden, he must also show that there are exceptional reasons why his detention is not appropriate.

---

[1] Although 18 U.S.C. § 3145(c) is titled "Appeal from a release or detention order," it is generally accepted that § 3145(c) was "included as an avenue of relief from the mandatory detention provisions," such as § 3143(a)(2). *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (citing *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *see also Carr*, 947 F.2d at 1240 ("Thus we conclude that the 'exceptional reasons' language of § 3145 may be applied by the judicial officer initially ordering such mandatory detention, despite its inclusion in a section generally covering appeals.").

The Seventh Circuit has instructed—or has at least implied—that "'exceptional reasons' must present a 'unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Herrera-Soto*, 961 F.2d at 647 (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2nd Cir. 1991)). In light of the COVID-19 pandemic, this Court, along with district courts across the county, have been determining whether the outbreak of the virus constitutes a compelling or exceptional reason that warrants the release of a defendant. *See, e.g.*, *United States v. Jones*, S1 19 Cr. 125, 2020 WL 1934997, at *2–6 (S.D.N.Y. Apr. 22, 2020); *United States v. Santiago*, No. 4:19-CR-405, 2020 WL 1820575, at *2 (N.D. Ohio Apr. 10, 2020). The District Court for the District of Kansas in *United States v. Clark* established a non-exhaustive and non-dispositive list of factors to assist courts with determining whether the COVID-19 pandemic, as it pertains to a particular defendant, constitutes a compelling reason for that defendant's release. No. 19-40068, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). The factors are: (1) the original grounds for the defendant's pre-trial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *Id.* In the past weeks these factors have seen widespread use across the country. *See, e.g.*, *United States v. Capozzi*, No. 3:16-CR-347, 2020 WL 1849777, at *4 (M.D. Pa. Apr. 13, 2020) (quoting *Clark*, 2020 WL 1446895, at *3); *Santiago*, 2020 WL 1820575, at *3 (same).

The Court notes that, in *Clark*, the district court was determining whether a defendant should be released from pretrial detention under 18 U.S.C. § 3142(i), which requires the defendant to demonstrate a "compelling reason" for his or her release. It is the Court's opinion that the *Clark* factors, specifically factors two through four, are still useful for determining

whether there are exceptional reasons why a defendant's detention would not be appropriate. *See Johnson*, 2020 WL 1821099, at * 3.[2] The difference between a "compelling" and an "exceptional" reason seems, at best, academic, and the Government, in its Response Brief, has not attempted to convince the Court otherwise. As such, the Court will use *Clark* factors two, three, and four as a general roadmap to determine whether an exceptional circumstance exists. The Court also believes it is imperative to consider the "actual conditions in the facility where the defendant is being held, and in particular the measures being taken there to address the potential outbreak of COVID-19." *Id.* at *3. As such, the Court will also take the conditions of the Jerome Combs detention facility into account.

## ANALYSIS

As previously stated, the Defendant, to be released pursuant to 18 U.S.C. § 3145(c), must first show, by clear and convincing evidence, that the he is unlikely to flee or pose a danger to the safety of any other person or the community. If he meets this burden, the Defendant must then show that there are exceptional reasons why his detention is not appropriate. The Court concludes that the Defendant has failed to demonstrate either.

### A.     *Risk of Flight and Risk of Harm to Others*

Having reviewed the Defendant's Motion and all other relevant filings, the Court concludes that the Defendant has not shown by clear and convincing evidence that he is unlikely to flee or pose a danger to the safety of any person or the community.

During the March 1, 2018 Detention Hearing [ECF. No. 49], the Court, finding that the Defendant was a danger to the community and no combinations of conditions exist to ensure

---

[2] The first *Clark* factor, the original grounds for the defendant's pre-trial detention, is no longer present at this stage in the proceedings as the Defendant is in presentence detention. Further, a similar consideration is already required under the 18 U.S.C § 3145(c) analysis, as the Defendant must convince the court that he or she does not pose a flight risk or a danger to the community.

safety to the community, ordered the Defendant to be held without bond pending trial or further proceedings. The Defendant moved to revoke the detention order in his Petition for Review of Detention Order [ECF No. 79], filed on March 15, 2018. In the Court's June 14, 2018 Opinion and Order [ECF No. 99], the Court denied his Petition. On September 20, 2019, the Defendant pled guilty [ECF No. 361] to Count I of the Superseding Indictment [ECF No. 257]. He was subsequently adjudged guilty by the Court on October 8, 2019 [ECF No. 387]. At that time, an analysis determining whether the Defendant needed to remain detained after the entry of his guilty plea was unnecessary, as his detention was mandatory. *See* 18 U.S.C. § 3143(a)(2).

The Defendant argues that the Court should grant him release on an unsecured bond with home detention because he "poses no risk of violating supervision and certainly no risk of flight, particularly during a global pandemic during which even leaving the house will endanger his life." Mot. Release on Home Detention 7. The Defendant supports this assertion by citing to his good behavior during his ongoing detention, noting that his criminal history category is I, and reasoning that any remaining sentence will be relatively brief. *Id.* at 6.

The Court, as previously stated, has already denied a similar request from the Defendant. Specifically, when the Defendant requested that the pretrial detention order be revoked in favor of home detention, the Court denied his request and concluded that "[t]here is clear and convincing evidence that there are no conditions short of detention in a jail setting that will reasonably assure the safety of the community." June 14, 2018 Opinion & Order 5, ECF No. 99. The Court, when it reached its conclusion and denied the Petition, was aware of the Defendant's criminal history and the length of possible sentences that could be imposed. As such, the reiteration of these facts does nothing to disturb the Court's previous conclusion. The only new facts introduced by the Defendant are that his conduct during his detention has not warranted any

7

disciplinary measures and specific information is now known regarding the length of his sentence. While the Defendant's recent good behavior certainly weighs in his favor, the newly introduced facts do not fully alleviate the Court's previous concerns regarding the Defendant's criminal background and affiliations as well as the dangers he poses to society. As such, the Court concludes that the Defendant has not provided clear and convincing evidence that he is unlikely to flee or pose a danger to the safety of any person or the community.

### B.     *Exceptional Reason for Release*

The Court also concludes, as stated above, that, at this time, the Defendant has not shown that there are exceptional reasons why his detention is not appropriate. To reach this conclusion, the Court used the second, third, and fourth *Clark* factors as a general roadmap.

*1.     The Defendant Expresses Only Generalized Concerns Related to the COIVD-19 Pandemic*

The Court recognizes the unique situation the COVID-19 pandemic has created for this country. While everyone faces some risk due to the pandemic, the Centers for Disease Control and Prevention have indicated that some persons are at higher risk, specifically:

- People 65 years and older;
- People who live in a nursing home or long-term care facility;
- People with chronic lung disease or moderate to severe asthma;
- People who have serious heart conditions;
- People who are immunocompromised;
- People with severe obesity;
- People with diabetes;
- People with chronic kidney disease undergoing dialysis; and
- People with liver disease

People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 29, 2020). The Defendant argues that he is a vulnerable person under the CDC guidelines because he suffers from diabetes, diabetic retinopathy, high blood pressure, and high cholesterol. Mot. Release on Home Detention 1. According to the American Diabetes Association, "[p]eople with diabetes do face a higher chance of experiencing serious complications from COVID-19." How COVID-19 Impacts People with Diabetes, American Diabetes Association, https://www.diabetes.org/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes (last visited Apr. 29, 2020). Due to his diabetes, the Defendant is an "at-risk person," and the Court takes the potential risk to Defendant Young very seriously.

An apparent consensus among the district courts is that "[t]he mere presence of the [COVID-19] virus, even in the detention setting, does not automatically translate to the release of a person accused." *United States v. Veras*, 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020) (citing cases denying motions for release). Furthermore, most courts have been unwilling to release defendants solely based on their status as an "at-risk individual." *See, e.g.*, *United States v. Stevens*, No. 19-350-02, 2020 WL 1888968, at *4 (E.D. Pa. Apr. 16, 2020) (citing *United States v. Morris*, No. 17-107, 2020 WL 1471683, at *2 n.3, 4 (D. Minn. Mar. 26, 2020); *United States v. Martin*, No. 19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020))

In his Motion, the Defendant details that COVID-19 has spread through Chinese and Iranian prisons, as well as the Cook County Jail in Chicago, Illinois, and argues, at least implicitly, that it is only a matter of time before a COVID-19 outbreak occurs at the Jerome Combs detention facility where he is housed. The Defendant also argues that, due to the nature of

9

the Jerome Combs detention facility, it is impossible to practice social distancing or self-isolation because it is an open dorm facility with inmates sleeping in bunk beds less than three feet apart. He contends that, for this reason, he is being placed at risk of infection on a daily basis.

At this time, the Defendant's concerns are speculative. The Defendant is unable to cite to a single COVID-19 case at the facility where he is detained. Furthermore, the Court is unable to predict when, if ever, there will be a COVID-19 outbreak, or even a single case, at the facility. The Court recognizes that the Defendant cannot practice social distancing or self-isolation as recommended by healthcare professionals; however, the Jerome Combs detention facility has imposed several precautionary measures to ensure a COVID-19 outbreak does not occur, including routinely taking inmate temperatures, halting all visitations as of March 13, 2020, requiring those who enter the facility to wear a facemask, and isolating all new detainees. Gov't's Resp. 7–8, ECF No. 458. The Court is sympathetic to the concerns of the Defendant; however, speculation about a future outbreak, especially when considered in tandem with the precautions taken by the Jerome Combs detention facility, is insufficient to constitute an exceptional reason that makes his detention not appropriate. *See Stevens*, 2020 WL 1888968, at \*4 ("[S]everal courts in [the Third] Circuit have 'recently held that speculation concerning present or future conditions involving COVID-19 at [a detention facility] does not suffice to establish exceptional reasons warranting release under 18 U.S.C. § 3145(c).'" (quoting *United States v. Jones*, No. CR 18-100, 2020 WL 1674145, at \*4 (W.D. Pa. Apr. 6, 2020)); *United States v. Whitfield*, 1:19-CR-146, 2020 WL 1976233, at \*2 (E.D. Mo. Apr. 9, 2020) ("Other than claiming that he is potentially more susceptible to illness or death *if* he contracts the COVID-19 virus . . . [the defendant's] argument that the jail's design creates a serious risk of infection is too speculative and generalized to warrant release."); *see also United States v. Raia*, 954 F.3d 594,

10

597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Kerr*, No. 3:19-CR-296, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) ("Any detainee would be exposed to the same risk that Defendant presents, and, as other courts have also concluded, the court cannot release every detainee who may be at risk of contracting COVID-19, as it would then be required to release *all* detainees." (citing *United States v. Fitzgerald*, No. 2:17-CR-00295, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020))).

Aside from these speculative concerns, the Defendant also cites to Illinois Governor Pritzker's Executive Order 2020-13 and United States Attorney General William Barr's memorandum as justification for his release; however, neither supports the Defendant's release. Governor Pritzker's Executive Order 2020-13 suspends "[a]ll admissions to the Illinois Department of Corrections from all Illinois county jails," aside from limited transfers. Exec. Order No. 2020-13 (Ill. Mar. 26, 2020). This executive order does not impact the Defendant, as he was not set to be admitted into the Illinois Department of Corrections, nor does it increase the likelihood that he will contract COVID-19. If anything, this Executive Order underscores the precautions taken by state and local governments to ensure the safety of detainees.

Attorney General Barr's memorandum instructs the Bureau of Prisons (BOP) to increase its use of home confinement. Office of Att'y Gen., Memorandum for Director of Bureau Prisons, Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020). The Defendant, however, is not in the BOP's custody. Additionally, the conditions detailed in the memorandum suggest that the Defendant, even if he was in the BOP's custody, would not be considered for home detention. Among other things, the memorandum requires that the inmate's re-entry plan and crime of conviction be assessed. *Id.* According to the

11

memorandum, inmates who demonstrate and verify a re-entry plan that "would present a lower risk of contracting COVID-19" should be favored. *Id.* Further, the memorandum specifies that "serious offenses should weigh more heavily against consideration for home detention," and that "[s]ome offenses . . . will render an inmate ineligible for home detention." *Id.* The Defendant has committed a serious offense and, as explained later, has not demonstrated a release plan. As such, the Barr memorandum does not support the temporary release of the Defendant.

Finally, the Defendant argues that, because there is a possibility that he will not enter the BOP system, his due process rights are being violated by his continued detention during the COVID-19 pandemic. In support of this argument the Defendant cites to *United States v. Scarpa*, *United States v. Mateo*, and the concurring opinion in *Davis v. Ayala*.

Ultimately, this argument is baseless. Even when taking into consideration the time the Defendant has already spent in detention, the Court, having reviewed the facts and details contained within the presentence investigative report, has no reason, at this time, to believe the Defendant will not enter the BOP's custody.

Additionally, the Defendant's citation to the above-mentioned cases is misguided, as none are comparable to the instant case. In *United States v. Scarpa*, the United States District Court for the Eastern District of New York released the defendant, with conditions, to the Beekman Hospital in New York City because he was terminally ill and expected to die before he could proceed to trial. 815 F. Supp. 88, 92–93 (E.D.N.Y. 1993). In *United States v. Mateo*, the United States District Court for the Southern District of New York granted a downward departure to the defendant's sentencing range because she was denied necessary healthcare during presentence detention. 299 F. Supp. 2d 201, 212–14 (S.D.N.Y. 2004). Finally, in the concurring opinion in *Davis v. Ayala*, Justice Kennedy called on the judiciary "to determine

whether workable alternative systems for long-term [solitary] confinement exist, and, if so, whether a correctional system should be required to adopt them." 135 S.Ct. 2187, 2210 (2015) (Kennedy, J., concurring).

The Defendant's case is unlike any of the above-referenced cases. The Defendant has been adjudged guilty of the alleged crime, the Defendant is not terminally ill, the Defendant has not been denied any necessary healthcare, and the Defendant has not been placed in long-term solitary confinement. Accordingly, the Defendant has failed to articulate how his due process rights are being violated by his presentence detention.

For the reasons stated above, the Court concludes that the risks the Defendant faces in light of the COVID-19 pandemic are not specific to him and, thus, do not support the existence of an exceptional reason that makes his detention not appropriate.

*2.     The Defendant Has Not Provided a Proposed Release Plan*

In *Clark*, the district court explained that "[t]he Bail Reform Act allows for temporary release only if the court determines that such release is 'necessary' for a compelling reason," and concluded that "[i]n the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them." *Clark*, 2020 WL 1446895, at *6. The Court finds that this *Clark* factor is appropriate to consider because the Defendant must show that there are exceptional reasons why his detention is not appropriate.[3] Detention of the Defendant would remain appropriate if his release plan resulted in increasing his risk of contracting COVID-19.

---

[3] As noted above, the Defendant cites the United States Attorney General's March 26, 2020 Memorandum in support of his release. Although the memorandum is inapplicable to the Defendant's detention, the Court notes that the memorandum encourages the BOP to prioritize the compassionate release of inmates who have a demonstrated and verifiable re-entry plan that will present a lower risk of contracting COVID-19. Office of Att'y Gen., Memorandum for Director of Bureau Prisons, Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020).

13

In the instant case, the Defendant has not provided a proposed release plan. In his motion he states that he "has a home to go to if released"; however, the Defendant has not specified where the home is located, who lives at the home, and what precautions the individuals living at the home have taken in light of the COVID-19 pandemic. The lack of a proposed release plan prevents the Court from conducting a full analysis and weighs against the Defendant's release.

3.  *The Court Is Unable to Determine Whether the Defendant's Release Would Increase COVID-19 Risks to Others*

The Court concludes that, based on the facts presented, it is unable to conduct a full analysis regarding this factor. Generally, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. The Court, due to the lack of detail provided, cannot determine whether the Defendant's release would create any increased risk, outside of the general risk articulated above, of spreading COVID-19 to others. As such, this factor does not weigh heavily in the Court's analysis.

## CONCLUSION

The Court concludes that the Defendant has failed to demonstrate by clear and convincing evidence that he is unlikely to flee or pose a danger to the safety of any other person or the community. As such, the Court DENIES his Motion for Release on Home Detention [ECF No. 454] without prejudice with leave to refile based on changed circumstances. Further, the Court concludes that the Defendant has not shown that there are exceptional reasons why his detention is not appropriate. This shortcoming further justifies the Court's denial of his Motion.

SO ORDERED on April 30, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT